**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL CASE NO. 3:11-CV-452-MOC-DSC**

| | |
|---|---|
| AMANDA BLOUNT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) **MEMORANDUM AND** |
| | ) **RECOMMENDATION** |
| CARLSON HOTELS, INC. (aka | ) |
| CARLSON HOTELS, AMERICAS) and | ) |
| formerly operating under the corporate | ) |
| name CARLSON HOTELS WORLD- | ) |
| WIDE, INC., COUNTRY INN & SUITES | ) |
| BY CARLSON, INC., & CEVINA, LLC | ) |
| & CHIMAN V. PATEL, in his Individual | ) |
| and Official Capacity, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**THIS MATTER** is before the Court on "Motion to Dismiss the Plaintiff's Second Amended Complaint of Defendants Cevina, LLC and Chiman V. Patel," Doc. 43, filed January 13, 2012, and "Motion to Dismiss the Plaintiff's Second Amended Complaint of Defendants Carlson Hotels, Inc. and Country Inns & Suites by Carlson, Inc.," Doc. 45, filed January 16, 2012 and the parties' associated briefs and exhibits, Docs. 31, 33, 39, 46, 47, and 48.

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1), and is now ripe for consideration.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that Defendants' Motions to Dismiss be <u>granted in part</u> and <u>denied in part</u>, as discussed below.

# I. PROCEDURAL AND FACTUAL BACKGROUND

Accepting the allegations of the Second Amended Complaint, Doc. 38, as true, as we must at this early stage in the proceeding, Plaintiff Amanda Blount ("Plaintiff") is an African-American female. In August 2009, Plaintiff was hired as a housekeeper at Country Inns & Suites by Carlson, Inc. located in Matthews, North Carolina. Approximately two months later, Plaintiff was offered a position as head housekeeper. Plaintiff became pregnant in November 2009. Plaintiff notified Defendants of her pregnancy as well as medical complications and her need for accommodations due to those complications. Plaintiff alleges that Defendants did not make reasonable accommodations for her, but that she remained able to perform the essential functions of her job.

Plaintiff alleges that after she was offered the head housekeeper position, she began to make Defendants aware of misconduct by other employees. She reported thefts of tips from her and other employees, thefts from guests, and unfair allocation of job duties, assignments and hours. Plaintiff alleges that management ignored her demands for timely and adequate corrective action and rewarded the offending employees with overtime, wrongfully acquired tips and extra work hours. Plaintiff reported the misconduct, presented pictures of employees engaged in thefts, and stated her intention to file a claim with the Equal Employment Opportunity Commission ("EEOC") to Chim Patel, Owner and Operator of the Country Inns & Suites by Carlson, and General Manager Chris Vanderhost. Vanderhost called a meeting with Plaintiff and other employees to discuss the allegations. Plaintiff became very anxious about retaining her job.

Vanderhost and other management began changing their policies regarding distribution of tips and room inspections as well as other employment conditions that adversely impacted Plaintiff. Defendants placed her under excessive scrutiny including surveilling her daily activities, listening to her conversations and inspecting the rooms she was assigned to clean. Plaintiff alleges that

Defendants ignored multiple customers' requests for services to be rendered by her, thus depriving her of potential tips. Plaintiff also alleges that tips she earned were given to other employees and that she was denied overtime opportunities.

Plaintiff reported all these wrongful acts to Vanderhost and stated her intent to report them to the EEOC. On January 13, 2010, Plaintiff was terminated. Plaintiff alleges that she was terminated because of her pregnancy complications, her request for accommodations and in retaliation for threatening to complain to the EEOC.

On January 25, 2010, Plaintiff filed a charge of discrimination with the EEOC and checked the box on the Charge form for claims of discrimination based on retaliation. As part of her Charge, Plaintiff alleged that "[o]n or about December 18, 2009, I informed Chris Vanderhorst, General Manager, that if she would not fix the problem, I would report her to the EEOC. On January 13, 2010, I was discharged from my position by Ms. Vanderhorst." Doc. 31, Ex. 9. Plaintiff alleged that "I believe that I have been discriminated against and discharged in retaliation for threatening to go to the EEOC, in violation of Title VII of the Civil Rights Act of 1964, as amended. Id. Plaintiff's Charge contains no claims of disability discrimination or gender discrimination nor any mention of her pregnancy or request for accommodations.

On June 17, 2011, the EEOC issued Plaintiff a Notice of Right to Sue stating that "the EEOC found reasonable cause to believe that violations of the statute(s) occurred with respect to some or all of the matters alleged in the charge but could not obtain a settlement with the Respondent that would provide relief for you." Doc. 1, Ex. 1. The letter also informed Plaintiff of her right to sue. On August 15, 2011, Plaintiff commenced this lawsuit, Doc. 1, against Defendant. On October 12, 2011, Defendants filed a Motion to Dismiss, Doc. 8. On October 31, 2011, Plaintiff requested leave to amend her Complaint, Doc. 12. On November 8, 2011, Plaintiff requested leave to correct an

error in her amended Complaint, Doc. 19. On November 9, 2011, Defendants filed a Motion to Dismiss, Doc. 23. On December 6, 2011, the Court issued an Order, Doc. 28, granting Plaintiff's Motion for Leave to Amend, Doc. 12 and Motion to correct the Amended Complaint, Doc. 19 and mooting Defendants' Motions to Dismiss, Docs. 8 and 23. On December 7, 2011, Plaintiff requested leave to file a Second Amended Complaint to amend the caption, Doc. 29. On January 3, 2012, the Court issued an Order, Doc. 36, granting Plaintiff's Motion to Amend Complaint. On January 5, 2012, Plaintiff filed her Second Amended Complaint, Doc. 38. On January 12, 2012, the Court issued an Order, Doc. 41, mooting Defendants Motions to Dismiss, Doc. 31 and 33, because they were filed before the Second Amended Complaint. In her Second Amended Complaint, Plaintiff asserts the following causes of action against Defendants: (1) Title VII and Americans with Disabilities Act, as amended; (2) Pregnancy Discrimination Act violations; (3) wage and hour violations; (4) retaliation; (5) wrongful discharge; and (6) negligent hiring, retention and supervision.

On January 13 and January 16, 2012, Defendants filed their Motions to Dismiss Plaintiff's Second Amended Complaint, Docs. 43 and 45. Defendants argue that a majority of Plaintiff's claims should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(6). The Motions to Dismiss have been fully briefed and are now ripe for review.

## II. STANDARD OF REVIEW

### A. Rule 12(b)(1) Standard

Pursuant to Rule 12(b)(1), a claim may be dismissed for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The existence of subject matter jurisdiction is a threshold issue the court must address before considering the merits of the case. Jones v. Am. Postal Workers Union, 192 F.3d 417, 422 (4th Cir. 1999). The plaintiff has the burden of proving that subject matter jurisdiction

exists. Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). When a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), "the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Id. The district court should grant the Rule 12(b)(1) motion to dismiss "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id.

### B. **Rule 12(b)(6) Standard**

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1960 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Id. at 1951. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 554-55) (allegation that government officials adopted

5

challenged policy "because of" its adverse effects on protected group was conclusory and not assumed to be true). Although the pleading requirements stated in "Rule 8 [of the Federal Rules of Civil Procedure] mark[] a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 1950.

Second, to the extent there are well-pleaded factual allegations, the court should assume their truth and then determine whether they plausibly give rise to an entitlement to relief. Id. at 1951. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief "will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief,'" and therefore should be dismissed. Id. (quoting Fed. R. Civ. P. 8(a)(2)). In other words, if after taking the complaint's well-pleaded factual allegations as true, a lawful alternative explanation appears a "more likely" cause of the complained of behavior, the claim for relief is not plausible. Id. at 1951-52.

Applying these principles in Iqbal to the plaintiff's allegation that the defendants had adopted a discriminatory policy permitting "restrictive conditions of confinement" for post-September 11 detainees, the Supreme Court held "the complaint does not show, or even intimate, that petitioners purposefully housed detainees in [restrictive conditions] due to their race, religion or national origin." Iqbal, 129 S. Ct. at 1952. Accordingly, dismissal was appropriate. Id.

### III. DISCUSSION OF CLAIMS

Plaintiff's Second Amended Complaint is not a model of clarity, but the Court has endeavored to determine what claims she has alleged and will address each in turn.

## A. Title VII and Americans with Disabilities Act Claim

"Before a plaintiff has standing to file suit under Title VII, he must exhaust his administrative remedies by filing a charge with the EEOC." Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 132 (4th Cir.2002). It is well settled that the scope of Plaintiff's EEOC charge defines the scope of any ensuing lawsuit. Id. (citing Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir. 2000)). The Fourth Circuit has held that "[o]nly those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir.1996). Claims that fall outside of the scope of the EEOC charge are procedurally barred. Dennis v. Cnty. of Fairfax, 55 F.3d 151, 156 (4th Cir.1995). The exhaustion requirement ensures that the employer is put on notice of the alleged violations so that the matter can be resolved out of court if possible. Miles v. Dell, Inc., 429 F.3d 480, 491 (4th Cir. 2005).

In this case, Plaintiff alleges that she is "a person with a disability, within the meaning of Title VII and the ADAAA, because she suffered from complications arising out of her pregnancy." Doc. 38 at 10. However, Plaintiff did not raise the issue of pregnancy or disability anywhere in her EEOC Charge. She did not check the box labeled "disability," or "sex" and did not mention her pregnancy, complications arising from her pregnancy, nor any type of disability in the "Particulars" section of the Charge narrative. Doc. 31, Ex. 9.

Plaintiff states that she is not a lawyer and did not have the benefit of counsel at the time she filed her Charge. She argues that the purpose of the charge is to initiate an EEOC investigation and not to state facts sufficient to establish a prima facie case. Plaintiff also argues that her Charge was broad enough to put a reasonable person on notice of all her charges. The Court disagrees.

Plaintiff failed to exhaust her administrative remedies with respect to any Title VII or ADA claim on the basis of disability, and the Court lacks jurisdiction. See, e.g., Chacko v. Patuxent Inst., 429 F.3d 505, 509 (4th Cir.2005)("[T]he plaintiff's claim generally will be barred if his charge alleges discrimination on one basis-such as race-and he introduces another basis in formal litigation-such as sex."); Miles, 429 F.3d at 491 (holding plaintiff failed to exhaust her administrative remedies because neither defendant employer nor the EEOC would have been put on notice of a retaliation claim because of the deficiencies in the plaintiff's EEOC charge); Evans, 80 F.3d at 963 (dismissing age discrimination charge where EEOC charge only alleged sex discrimination, holding that "age discrimination does not necessarily flow from sex discrimination and vice versa"). Therefore, the undersigned respectfully recommends that Defendants' Motions to Dismiss with respect to Plaintiff's First Cause of Action, Title VII and ADA, be granted.

B. Pregnancy Discrimination Act Violations Claim

The Court finds that Plaintiff failed to exhaust her administrative remedies with regard to her pregnancy discrimination claim. The Pregnancy Discrimination Act, 42 U.S.C.A. § 2000e(k), incorporates pregnancy discrimination into Title VII's definition of discrimination based upon sex. Plaintiff's EEOC charge did not raise the issue of pregnancy or sex discrimination. She did not check the box labeled "sex" and did not mention her pregnancy nor any type of gender discrimination in the "Particulars" section of the Charge narrative. Doc. 31, Ex. 9. Plaintiff has failed to exhaust her administrative remedies and this claim should be dismissed. Therefore, the undersigned respectfully recommends that Defendants' Motions to Dismiss with respect to Plaintiff's Second Cause of Action, Pregnancy Discrimination Act Violations, be granted.

**C. Wage and Hour Violations Claim**

Plaintiff's third cause of action alleges that Defendants failed to pay her tips that she earned,

denied her opportunities to earn additional tips, failed to pay her overtime, and reduced her hours, all resulting in lower pay. Plaintiff alleges that these actions occurred when she threatened to report them as violations. Plaintiff alleges that these actions are in violation of the The North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen.Stat. § 95-25 .1 et seq., and/or the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. Defendants do not argue that all of Plaintiff's claims under this cause of action should be dismissed, but instead focus on her claims concerning *overtime* wages under the NCWHA. Defendants argue that these claims must be dismissed because Plaintiff is subject to the FLSA, and accordingly, no cause of action exists for her overtime wages under the NCWHA. Plaintiff argues that while the NCWHA may be preempted in some cases by the FLSA., she is permitted at this early stage of the proceedings to plead her NCWHA claims in the alternative to her FLSA claims. The Court agrees and respectfully recommends that Defendants' Motions to Dismiss with respect to Plaintiff's overtime claims, <u>be denied</u>.

### D. <u>Retaliation Claim</u>

Section 704(a) of Title VII makes it unlawful to retaliate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). The elements for such a claim are that (1) Plaintiff engaged in a protected activity; (2) the defendant took a materially adverse action against her; and (3) a causal connection exists between the claimed protected activity and the alleged adverse action. <u>Holland v. Washington Homes, Inc.</u>, 487 F.3d 208, 218 (4th Cir. 2007). Temporal proximity between the protected activity and the materially adverse action may suffice to establish a causal connection. <u>Matvia v. Bald Head Island Mgmt., Inc.</u>, 259 F.3d 261, 271 (4th Cir.2001).

Protected activities include "utilizing informal grievance procedures as well as staging

9

informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." Laughlin v. Metropolitan Washington Airports, 149 F.3d 253, 259 (4th Cir. 1998). An employee is not required to "engage in the formal process of adjudicating a discrimination claim." Id.; see also Beckwith v. Cortegra Group, Inc., No. 1:08CV168, 2008 WL 4891118, at *4 (November 12, 2008)(finding that threat to file a complaint with the EEOC is protected activity); Armstrong v. Index Journal Co., 647 F.2d 441, 448 (4th Cir.1981) ("The opposition clause has been held to encompass informal protests, such as voicing complaints to employers or using an employer's grievance procedures.").

Although Plaintiff's scattershot approach in her Complaint is not a model of clarity, she does allege that she engaged in protected activities by talking to management about "wrongdoings" and her intent to file a claim with the EEOC on two occasions. The Fourth Circuit has "recognized that section 704(a) protects activity in opposition not only to employment actions actually unlawful under Title VII but also employment actions an employee reasonably believes to be unlawful." E.E.O.C. v. Navy Fed. Credit Union, 424 F.3d 397, 406 (4th Cir.2005). After taking these actions, Plaintiff alleges that she was terminated on January 13, 2010. Plaintiff's Second Amended Complaint does not give a specific time frame for when she complained to management. Her EEOC charge indicates that she spoke with Vanderhost on or about December 19, 2009 and informed her "if she would not fix the problem, I would report her to the EEOC." Doc. 31, Ex. 9. Close proximity in time can give "rise to sufficient inference of causation to satisfy the prima facie requirement." King v. Rumsfield, 328 F.3d 145, 151(4th Cir. 2003) (holding that a two month and two week time frame between employer's notice of EEOC complaint and plaintiff's termination satisfied prima facie causation requirement).

At this stage of the proceedings, the Court finds that Plaintiff's allegations are sufficient to

support a prima facie case of retaliation under Title VII. Therefore, the undersigned respectfully recommends that Defendants' Motions to Dismiss with respect to Plaintiff's Fourth Cause of Action, Retaliation under Title VII, be <u>denied</u> with respect to all Defendants except Chiman V. Patel, in his individual capacity. An individual may not be held personally liable under Title VII. See <u>Lissau v. Southern Food Service</u>, 159 F.3d 177, 180 (4th Cir. 1998).

The Court also construes Plaintiff's Second Amended Complaint as attempting to raise a retaliation claim under the ADA. As stated above, the Court finds that Plaintiff failed to exhaust her administrative remedies with respect to any ADA claim, and the Court lacks jurisdiction over it. Therefore, the undersigned respectfully recommends that Defendants' Motions to Dismiss with respect to Plaintiff's Fourth Cause of Action, Retaliation under the ADA, be <u>granted</u>.

Plaintiff states in her response that "Plaintiff's retaliation claim is not on the basis of FLSA; rather it is on the basis of the violations of the requisite laws that ultimately violated Title VII and ADA, as stated in her Complaint and herein." Doc. 46 at 17. In another section of her response, Plaintiff states that "[she] is not bringing the claim for retaliation in violation of the wage and hour act..." Doc. 46 at 14. Consequently, the Court will not consider Defendant's arguments regarding retaliation under the FLSA and NCWHA.

**E. <u>Wrongful Discharge</u>**

North Carolina is an employment "at will" state. Employees may be fired at any time and for any reason, or for no reason. <u>Coman v. Thomas Mfg. Co.</u>, 381 S.E.2d 445, 446 (N.C. 1989). However, there is a limited public policy exception to the "at will" rule which provides that "there can be no right to terminate such a contract for an unlawful reason or purpose that contravenes public policy." <u>Id.</u> at 447. Courts define public policy as "the principle of law that holds no citizen can lawfully do that which has a tendency to be injurious to the public or against the public good."

11

Johnson v. Mayo Yarns, Inc., 484 S.E.2d 840, 842-43 (N.C. App. 1997). This limited exception "is applicable where (1) the public policy of North Carolina is clearly expressed within our general statutes or state constitution, or (2) potential harm to the public is created by defendant's unlawful actions." McDonnell v. Guilford County Tradewind Airlines, 670 S.E.2d 302, 306 (N.C. App. 2009).

The NCEEPA states in pertinent part, "[i]t is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race, religion, color, national origin, age, sex or handicap by employers which regularly employ 15 or more employees." N.C. Gen. Stat. § 143–422.2. Although this statute does not provide a private cause of action, Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir. 2000), it does support a common law claim for wrongful discharge in violation of public policy, as Plaintiff alleges here. McLean v. Patten Communities, Inc., 332 F.3d 714, 720–21 (4th Cir. 2003).

No North Carolina court has addressed whether this statutory provision encompasses a claim of pregnancy discrimination. See Sweeney v. Marc Global, Inc., No. 3:06cv182, 2008 WL 313618, at *11 (W.D.N.C. February 4, 2008). Assuming that the North Carolina courts would recognize such a claim, it would likely be analyzed in the same manner as a Title VII claim. Id. "Given the similar language and underlying policy of § 143–422.2 and Title VII, 42 U.S.C. § 2000e et seq., the North Carolina Supreme Court has explicitly adopted the Title VII evidentiary standards in evaluating a state claim under § 143–422.2." Hughes v. Bedsole, 48 F.3d 1376, 1383 (4th Cir.1995). Thus, a claim for wrongful discharge in violation of the public policy set forth in the NCEEPA rises or falls with its counterpart under Title VII.

Title VII prohibits discrimination in employment "because of" sex. 42 U.S.C. § 2000e-2(b).

The Pregnancy Discrimination Act amended Title VII to add that "because of sex" includes pregnancy. Id. § 2000e(k). Plaintiff's claim is analyzed as a claim under Title VII of the Civil Rights Act of 1964. To support a claim of pregnancy discrimination, an employee must allege that (1) she was a member of a protected class, (2) she suffered an adverse employment action, (3) at the time of the adverse action, she was performing at a level that met her employer's legitimate job expectations, and (4) the position remained open or was filled by a similarly qualified applicant outside the protected class. Miles v. Dell, Inc., 429 F.3d 480, 485 (4th Cir.2005).

There is no dispute that Plaintiff is in a protected class and that she was subject to an adverse employment action. Plaintiff alleges that her job performance was satisfactory by stating that "she was never suspended, put on probation, or subject to any other disciplinary action." Doc. 38 at 5. The issue is whether Plaintiff has pled sufficient facts to satisfy the fourth element-that she was treated differently from similarly situated employees outside the protected class.

The Court finds that Plaintiff has alleged sufficient facts to show that she was treated differently from similarly situated employees outside the protected class. Plaintiff alleges that after informing Defendants of her pregnancy and her need for accommodations, she was treated differently than other similarly situated employees by being placed under excessive scrutiny, having her daily activities and conversations surveilled, and having inspections of the rooms she was assigned to clean. Plaintiff states that "she was terminated because of her pregnancy complications...." Id. at 9. Plaintiff has articulated facts, which if accepted as true, state a plausible claim entitling her to relief. While the Court finds that Plaintiff has failed to exhaust her administrative remedies and is barred from bringing a claim under Title VII, the Court also finds that Plaintiff's claim for pregnancy discrimination survives under the Title VII evidentiary standards at this stage of the proceeding. Plaintiff sufficiently alleges a claim for wrongful discharge under the

13

NCEEPA based upon pregnancy discrimination. However, under the NCEEPA, an action for wrongful discharge can only be asserted against the employer and not against a supervisor in his or her individual capacity. Cox v. Indian Head Industries, Inc., 187 F.R.D. 531, 536 (W.D.N.C. 1999). Therefore, the undersigned respectfully recommends that Defendants' Motions to Dismiss with respect to Plaintiff's Fifth Cause of Action, Wrongful Discharge, be <u>denied</u> with respect to all Defendants except Chiman V. Patel, in his individual capacity.

**F. <u>Negligent Hiring, Retention and Supervision</u>**

The elements of this claim are: "(1) that an incompetent employee committed a tortious act resulting in injury to the plaintiff; and (2) that prior to the act, the employer knew or had reason to know of the employee's incompetency." Smith v. First Union Nat'l Bank, 202 F.3d 234, 249-50 (4th Cir. 2000); Smith v. Privette, 495 S.E.2d 395, 398 (N.C. App. 1998). North Carolina law requires, as "[a]n essential element of a claim for negligent retention," that an employee of the employer "committed a tortious act resulting in plaintiffs' injuries." Waddle v. Sparks, 414 S.E.2d 22, 29-30 (N.C. 1992). Title VII discrimination, harassment, and/or retaliation cannot serve as the "underlying tort" in support of a claim for negligent retention and supervision. McLean v. Patten Communities, Inc., 332 F.3d 714, 719 (4th Cir.2003) (holding that neither retaliation nor harassment are "common law torts," and therefore cannot constitute prima facie element of tortious acts" for purposes of a negligent supervision claim). Plaintiff's Complaint fails on the first element, as it simply does not allege that "an incompetent employee committed a tortious act resulting in injury to the plaintiff." Therefore, the undersigned respectfully recommends that Defendants' Motions to Dismiss be <u>granted</u> with respect to this claim.

### III. <u>RECOMMENDATION</u>

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that the

"Motion to Dismiss the Plaintiff's Second Amended Complaint of Defendants Cevina, LLC and Chiman V. Patel," Doc. 43, and the "Motion to Dismiss the Plaintiff's Second Amended Complaint of Defendants Carlson Hotels, Inc. and Country Inns & Suites by Carlson, Inc.," Doc. 45, be **<u>GRANTED IN PART and DENIED IN PART</u>**, as summarized below.

1. Plaintiff's First Cause of Action, Title VII and Americans with Disabilities Act, be dismissed against all Defendants;

2. Plaintiff's Second Cause of Action, Pregnancy Discrimination Act Violations, be dismissed against all Defendants;

3. Plaintiff's Fourth Cause of Action, Retaliation, be dismissed against Chiman V. Patel, in his individual capacity;

4. Plaintiff's Fifth Cause of Action, Wrongful Discharge, be dismissed against Chiman V. Patel, in his individual capacity;

5. Plaintiff's Sixth Cause of Action, Negligent Hiring, Retention and Supervision, be dismissed against all Defendants; and

6. The Motions to Dismiss Plaintiff's remaining claims under her Third Cause of Action, Wage and Hour Violations, her Fourth Cause of Action, Retaliation, and her Fifth Cause of Action, Wrongful Discharge, be denied.

### IV. <u>NOTICE OF APPEAL RIGHTS</u>

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. <u>Diamond v. Colonial Life</u>, 416 F.3d 310, 315-16 (4th Cir. 2005);

Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989).  Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal.  Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Max O. Cogburn, Jr.

**SO RECOMMENDED AND ORDERED**.

Signed: March 1, 2012

David S. Cayer
United States Magistrate Judge